IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA    :
                                :
            v.                 :       1:22CR356-1
                                : REDACTED PURUSANT TO
JOSHUAH TAYLOR BRADSHAW   :    18 U.S.C. § 3509(d)

GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS

NOW COMES the United States of America, by Sandra J. Hairston, United States Attorney for the Middle District of North Carolina, and hereby files this response to Bradshaw's Motion to Suppress. For the reasons set forth below, the motion should be denied.

I. **PROCEDURAL HISTORY**

On October 31, 2023, the grand jury returned a six-count Indictment against the defendant, Joshuah Taylor Bradshaw ("Bradshaw"). Counts One, Three, Four and Five charged Bradshaw with production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e); Count Two charged him with distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1); and Count Six charged him with possession of child pornography involving prepubescent minor and minor under the age of twelve, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). *See* Docket [Dkt.]1. The defendant filed

1

a motion to suppress on May 29, 2023. *See* Dkt. 21. In this motion, Bradshaw argues that the cell phones in this case were unlawfully seized and searched and therefore the evidence from the cell phones should be suppressed. *Id*. The cell phones were lawfully seized and the good faith exception applies to the search of the cell phones. The defendant's motion should therefore be denied.

## II. <u>FACTUAL BACKGROUND</u>

On August 7, 2020, James Townsend ("Townsend") found emails in Bradshaw's account describing the sexual abuse of Minor-1, ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ and called the police. Specifically, Townsend logged in to Bradshaw's ProtonMail email account, bradshaw90@protonmail.com, to look for a coupon to use for Bradshaw's birthday dinner that night.[1] While searching for the coupon on his own phone, Townsend saw a conversation within the email account that took place that same day that described the sexual abuse of Minor-1. Townsend took screenshots of the conversation (as further described below) and called the police.

When Townsend went to try to check on Minor-1, Bradshaw was in the bathroom at Townsend's residence and the door was locked. When Bradshaw opened the bathroom door, Bradshaw was naked and told Townsend that

---

[1] Bradshaw had previously given Townsend access to his ProtonMail account to assist him with school-related matters.

Minor-1 was in the shower. Townsend then went to the Hoke County Sheriff's Office to report the incident and spoke to Det. Sullivan.

Upon arrival at the Sheriff's Office, Townsend and Minor-1's mother, Parent-1, spoke with Det. Sullivan. Detectives Rigsbee ("Rigsbee") and Phillips ("Phillips") arrived when Det. Sullivan appeared to have just started speaking with Townsend. This interaction was captured on Rigsbee's body camera.[2]

Townsend told the three officers that Bradshaw ███████████████ ███████████████ Townsend allowed Bradshaw to stay with him for several months and during a portion of that time, the two were involved in a romantic relationship. Townsend said he logged into Bradshaw's ProtonMail email to try to get a coupon for dinner when he saw the sexually explicit emails and

---

[2] Throughout the evening of August 7, 2020, Rigsbee's body camera was used by Detective Rigsbee, Detective Sullivan, and Detective Phillips at times during the evening. The following 10 files contain the footage from the evening in chronological order:
RIGSBEE_9B00413_202252.MP4;          RIGSBEE_9B00413_203304.MP4;
RIGSBEE_9B00413_204304.MP4;          RIGSBEE_9B00413_204440.MP4;
RIGSBEE_9B00413_210740.MP4;          RIGSBEE_9B00413_211738.MP4;
RIGSBEE_9B00413_212740.MP4;          RIGSBEE_9B00413_213740.MP4;
RIGSBEE_9B00413_214740.MP4; and RIGSBEE_9B00413_215406.MP4. The total running time of all of the video files is approximately 1:15:11. At the suppression hearing, the government intends to introduce into evidence portions of this body camera from August 7, 2020, but does not intend on admitting all of it (for example the RIGSBEE_9B00413_214740.MP4 and RIGSBEE_9B00413_215406.MP4 files). As of the filing of this response, the government intends on calling Detective Sullivan, Detective Blakely, and Special Agent Gaby Dye as witnesses at the suppression hearing.

3

started reading them. He provided Bradshaw's email account name. Townsend said that the emails "started getting terrible" and indicated that he "took screenshots of all of it, just in case [Bradshaw] deleted it." Townsend indicated that in the emails Bradshaw talked about how he ███████████████████ ████████████████████████████████████████████████████ Townsend said that he called police and when he went to try to get the child, Bradshaw had Minor-1 in the shower naked.

Townsend said that Bradshaw was talking to the unknown man from Georgia and was arranging to meet to do sexual things with Minor-1. Townsend said that "the guy was wanting videos and pictures of things happening, so [he did not] know if that's what [Bradshaw] was doing in the shower." Townsend also indicated that he spoke to Parent-1 ██████████ ████████████████████████████████████████████████████ Townsend was visibly upset and crying. He told the deputies that there were approximately 80 email messages from two email threads and that he took screenshots of them.

At that point, Rigsbee and Phillips left to go do a welfare check on the Minor-1. Rigsbee gave his body camera to Sullivan so she could continue the interview with Townsend. Prior to leaving to go to the residence, Rigsbee asked Townsend if they had permission to enter the house to check on Minor-1, and Townsend said yes.

4

When Sullivan arrived at the residence, Bradshaw, Minor-1, Rigsbee, and Phillips were in the residence. She asked to speak with Bradshaw in private because of the nature of the emails. Bradshaw led her into a bedroom off of the living room. Phillips was also present in the room. This interaction was captured on body worn camera.

When asked if he had any email accounts, Bradshaw said he only had a gmail email account. When Sullivan asked if he used bradshaw90@protonmail.com, Bradshaw admitted to having it and using it earlier that day. Bradshaw denied having any inappropriate relations with Minor-1 or engaging in any sexual activities with Minor-1. He also denied sending any emails about having sexual relations with Minor-1. He said that Townsend would not send any emails of that nature. Bradshaw said he used his iPhone and his laptop to access the email account in question.

Sullivan asked Bradshaw if they could look at the emails. Then, Bradshaw pulled out his red iPhone 11 ("red iPhone") and clicked on an email and said, "Now this guy, I don't know who he is. Apparently he's been

5

messaging on here […]" Sullivan then asked, "do you mind if I click on one so we can read it together?" Bradshaw clicked on the email and Sullivan read the email as Bradshaw held the red iPhone. She read it to herself out loud, including portions of the messages that discuss "piss play" and "him" taking Bradshaw's "dick." Minor-1 then walked in the bedroom and Sullivan asked if she could look at it because she does not want to read it out loud. Bradshaw handed her the phone and says, "normally when I see stuff like that, I delete it."

While Sullivan was looking at the messages, Bradshaw said, "I haven't had a chance to go through all these emails and normally I just I delete everything because I don't want anything to do with it. ███████████████████

███" Bradshaw indicated that he has had a problem with hacking of a financial application used on his phone. He also indicated that Townsend would not have sent any of the emails in question. When Sullivan stated that there was some "pretty explicit stuff" on the emails, Bradshaw said, "I know there is trust me." Sullivan then read another series of the conversation out loud, including a portion that talks about video chatting. Bradshaw says, "I have looked at all of it, but I haven't had a chance to figure things out. Everything you're seeing that's clicked on. ███████████████████ I've not had any time."

6

Sullivan asked if Phillips had any questions and handed Phillips the phone. Phillips and Bradshaw looked at the phone together. During this time, Phillips asked Bradshaw's permission to click on certain items on his phone and Bradshaw allowed him to. Bradshaw received texts and made and received calls. At some point, Sullivan left the room and Rigsbee entered. Phillips later asked if he could click on the photo album since "Tom" asked for things. Bradshaw said he did not want Phillips to click on the folder because "there's a lot of stuff you don't want to see." Bradshaw indicated that he and Townsend "have played around." Phillips indicated that he would not go through that portion of the phone if Bradshaw did give him permission. Then Bradshaw says, "please don't because I don't want to be embarrassed of what ya'll see on there."

Phillips then told Bradshaw that they were seizing the phone. Bradshaw asked, "In case ya'll do have to go through it [...] can I go in there and delete some pictures of me and him?" Then the detectives explained that Bradshaw could give law enforcement permission to go through the phone or they would get a search warrant for the phone. At this point, Bradshaw asked to call his lawyer. When Sullivan walked back to ask for consent to take the phone, the phone had been seized.

Bradshaw then gave permission for Minor-1 to go with Parent-1 and law enforcement left the residence. Bradshaw was not arrested that night. That

same evening, Townsend called Detective Sullivan and indicated that Bradshaw was trying to have his cellphone erased so law enforcement would not find anything on it. Townsend indicated that he was trying to send the screenshots of the emails he found in Bradshaw's ProtonMail email account.

On August 9, 2023, Townsend sent Detective Sullivan the screenshots. He also told Detective Sullivan that Bradshaw was trying to hire a hacker to delete everything.

On August 19, 2023, Detective Blakley applied for a state search warrant for the seized iPhone. Prior to submitting the application for the search warrant, Detective Blakley sent it and its attachments to an Assistant District Attorney ("ADA") for review. Following the ADA's review, the warrant was submitted to North Carolina Superior Court Judge Michael A Stone, who issued the search warrant for Bradshaw's seized iPhone on August 19, 2023.[3] Attachment A of the search warrant of the red iPhone contained the following description of the evidence to be seized:

- Stored, received, and/or sent communications to include but not limited to voice mails, text messages, messaging apps, photo apps, e-mails, IP-addresses, telephone numbers, name contact lists, digital images/video clips, incoming-outgoing-stored call logs, physical and e-mail addresses, the numeric phone number identified to this cell phone

---

[3] A state search warrant signed by Judge Stone was also sought and issued for the iPhone seized on September 17, 2020 incident to arrest on state charges. The defendant seeks to suppress evidence from this phone in his motion to suppress. *See* Dkt. 21 at 3-4. The government does not intend to introduce any evidence from this phone at trial.

Case 1:22-cr-00356-CCE   Document 29   Filed 06/05/23   Page 8 of 30

- Stored information on the cellphone to include Global Positioning System coordinates, locations, maps, audio recordings, video recordings, voice messages, web browser history, wireless networks, user accounts, installed applications, databases, voicemail messages, and other files or file fragments
- Smart phone and cell phone related storage media including but not limited to, social media, messaging apps, instagram, facebook flash; media, memory sticks, secure digital (SD) cards, graphic files including but not limited to .JGP, .GIF, .TIF, .AVI, and .MPG, and other magnetic and/or optical recording media
- Records evidencing use or moderation of an internet account, and groups including, but not limited to screen names, filenames, digital pictures, dates/times of posted images, IP connection information related to the postings
- Records evidencing use or ownership of the phone, including, but not limited to registry and setup information within the smart phones operating system and customization to the operating system's directory structure

Dkt. 21-2 at 4.

A review of the device revealed more than 150 videos and 200 images containing child pornography, including those depicting the rape and sexual exploitation of Minor-1. On August 28, 2020, a state arrest warrant was issued for Bradshaw for multiple child pornography and child sex offense-related charges.

On September 15, 2020, the Federal Bureau of Investigation ("FBI") opened a case to assist the Hoke County Sheriff's Office in locating and arresting Bradshaw. On September 17, 2020, Bradshaw was arrested at a treatment center in Oxford, Mississippi and a cell phone was seized. He has remained in custody since. HCSO also received a signed search warrant from

9

a state Superior Court Judge for the phone seized from Bradshaw when he was arrested. HCSO did not request further assistance from the FBI with the matter and the case was closed out by the FBI.

In the summer of 2021, FBI Special Agent Dye reopened the case at the request of the HCSO. On August 19, 2021, a federal search warrant was signed by the Honorable Robert B. Jones, Jr., United States Magistrate Judge, in the Eastern District of North Carolina for the search of the red iPhone belonging to and seized from Bradshaw for evidence of violations of 18 U.S.C. §§ 2251(a) (production of child pornography) and 2252A(a)(5)(B) (possession of child pornography) including attempts and conspiracies of the offenses. *See* Dkt. 21-3. A review of the phone revealed that the phone contained approximately 634 image files and 501 video files depicting minors engaged in sexually explicit conduct. Included in these files of child pornography were at least 170 video files and 211 image files depicting the rape and sexual exploitation of Minor-1. Dye also located numerous conversations occurring on the application "telegram" where Bradshaw discusses the sexual exploitation of Minor-1 and trades images and videos he produced with others.

The government seeks to introduce evidence seized pursuant to the federal search warrant.

## III.  **ARGUMENT**

10

The defendant makes two general arguments in support of his motion to suppress. First, he argues that the warrantless seizure of his iPhone on August 7, 2020 was unlawful. Dkt. 21 at 9-11. Second, he argues that the search warrant to search the foregoing cell phone was overbroad, exceeded the probable cause to support it, and was not particularized. *Id.* at 11-15.

a.   *Law Enforcement Lawfully Seized Bradshaw's iPhone on August 7, 2020 as exigent circumstances existed.*

The Fourth Amendment of the United States Constitution ensures the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., amend. IV. "The ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Exigent circumstances permit the warrantless entry and control of property while a search warrant is being obtained. *United States v. Cehpas*, 254 F.3d 488, 494-95 (4th Cir. 2001).

Three categories of exigent circumstances are exceptions to the warrant requirement: the emergency aid exception, the hot pursuit exception, and the destruction of evidence exception. *King,* 563 U.S. 459-62. Exigent circumstances permitting seizure without a warrant arise when probable cause to search exists and officers reasonably believe that contraband or other evidence may be destroyed or removed before a search warrant can be

11

obtained. *See United States v. Grinder*, 808 F. App'x 145, 147 (4th Cir. 2020) (unpublished); *United States v. Brown*, 701 F.3d 120, 126-27 (4th Cir. 2012); *Mincy v. Arizona*, 437 U.S. 385, 392-94 (1978).

In making a determination of whether a warrantless seizure is justified by exigent circumstances, the Court should consider "whether: (1) the police had probable cause to believe that the item seized contained contraband or evidence of a crime; (2) the police had 'good reason to fear' that, absent such seizure, the defendant would destroy material evidence before the officers could obtain a warrant; and (3) the police 'made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy.'" *United States v. Burton*, 756 F. App'x 295, 298-99 (4th Cir. 2018), quoting *Illinois v. McArthur*, 531 U.S. 326, 331-33 (2001). It is not necessary to prove that destruction or removal of evidence was imminent; "rather, the proper inquiry focuses on what an objective officer could reasonably believe." *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991).

Courts have applied the exigent circumstances exception specifically to the seizure of cellular telephones to prevent destruction of evidence. *See Burton*, 756 F. App'x at 298-99 (upholding a warrantless seizure of a telephone after finding that the officers had probable cause and the officers had "good reason to fear" that Burton would destroy the evidence of the phone if he were permitted to leave with them); *United States v. Babcock*, 924 F.3d 1180, 1193-

12

95 (6th Cir. 2019) (warrantless seizure of cell phone did not violate the Fourth Amendment where a reasonable experienced police officer could believe the suspect of illegal activity would delete incriminating evidence off of a phone before a search warrant could be issued); *United States v. Hewlett*, 471 F. Supp. 3d 724, 743 (E.D. Va. 2020); *United States v. Hagy*, 2022 WL 1573180, at *3-6 (S.D.W.V. May 18, 2022); *Riley v. California*, 573 U.S. 373, 388 (2014); *see also United States v. Mason*, 2021 WL 5647774, *2-4 (6th Cir. 2021) (unpublished). The "fact that a suspect is 'aware that the police are on [his] trail' supports an exigent circumstances finding." *Burton*, 756 F. App'x 299 (citing *Cephas*, 254 F.3d at 495 (quoting *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981))); *see, e.g.*, *Hagy*, 2022 WL 1573180, at *4.

Here, the officers had more than probable cause to believe Bradshaw's phone contained evidence of the crime. First, officers had a report from Bradshaw's close confidante, Townsend, in which Townsend reported logging into Bradshaw's email account from his own phone and finding explicit email messages between Bradshaw and another individual describing the sexual abuse of Minor-1 and discussing meeting up to have sex with Minor-1. Townsend describes the email messages in detail to the officers, including specific sexual acts Bradshaw has engaged in with Minor-1, requests for videos and pictures by "Tom W" and plans to meet up at a hotel so the two men can engage in sexual activity with Minor-1. Townsend also indicates he took screen

13

shots of the messages in case Bradshaw deleted them and said he was worried Bradshaw was actively doing something with the child since he believed Bradshaw and Minor-1 were naked and in the shower together when he left the residence.

Next, officers went to Bradshaw's house for a welfare check where Bradshaw thereafter initially denied having the email account in question. When asked about the specific ProtonMail email account, Bradshaw changes his story and admits to having the ProtonMail email at issue and using his iPhone and laptop to access the email account as recently as that day. He denies engaging in any sexual activity with Minor-1 or sending any sexually explicit messages regarding Minor-1. Bradshaw voluntarily consents to police looking at his iPhone, which is on his person and reading the email messages on the phone. The detectives see messages discussing the sexual abuse of Minor-1 and Bradshaw denies sending any of the messages. Bradshaw asserted he did not know how the messages got there, admitted that he has seen explicit messages and indicated more than once that he deletes the messages when he sees them.

Second, officers had "good reason to fear" that, absent seizure, Bradshaw would destroy material evidence before the officers could obtain a warrant— indeed, as discussed, Bradshaw asked officers to return his phone so he could delete certain photos. Bradshaw knew he was under investigation for the

sexual assault of Minor-1. Detectives read Bradshaw the email messages on Bradshaw's email using Bradshaw's iPhone. It was abundantly clear that he was being investigated and that evidence was located on his phone. The deputies had "good reason to fear" Bradshaw would delete evidence if they left to get a search warrant. And as noted, this fear was founded, as once officers told him they were seizing his cell phone, he promptly asked to delete photos from the phone. Further, the officers' fears regarding destruction of evidence was confirmed when Townsend contacted Detective Sullivan the same night they seized the phone to tell her Bradshaw was trying to find a way to erase his cell phone. Townsend then contacted her *again* two days later informing her that Bradshaw was trying to hire a hacker to delete evidence.

Finally, while there was a great need to investigate the sexual exploitation of Minor-1, they did so while taking into consideration Bradshaw's personal privacy. Once Townsend spoke to law enforcement, they did not immediately arrest Bradshaw or seize his cell phone. Instead, they investigated further by speaking with Bradshaw and allowing him to show them the emails and share his version of what happened. Furthermore, following the seizure of his phone, they obtained a state search warrant. The detectives in this case took reasonable efforts and available measures "to reconcile their law enforcement needs with the demands of personal privacy."

Case 1:22-cr-00356-CCE   Document 29   Filed 06/05/23   Page 15 of 30

*Burton*, 756 F. App'x at 299 (internal quotations and citations omitted). Thus, the seizure of Bradshaw's iPhone on August 7, 2020 was lawful.

To that end, the Fourth Circuit's analysis in *Burton*, while not published, is persuasive. In that case, a woman complained to police that Burton had tried to take a picture of her under her skirt by crouching closely behind her and pointing a cell phone near her skirt. *Id*. at 297. During a voluntary interview with Burton a few days after the incident, Burton admitted crouching near the woman with a cell phone in hand but denied taking any photos. *Id*. The officer seized Burton's cell phones at the interview, believing he had probable cause and that Burton would delete evidence if he left with the phones. *Id*. The Fourth Circuit found the seizure of the phones justified without a warrant. *Id*. at 299. First, the Court found there was probable cause to seize the phones. *Id*. Next it found that given Burton was aware he was under investigation and the ease of which he could destroy evidence from the phones, the officer who seized the phone reasonably assumed Burton might destroy evidence from them. *Id*. Finally, the Fourth Circuit found that the officer "made sufficiently 'reasonable efforts' to balance law-enforcement efforts needs with Burton's Fourth Amendment rights" as the officer "did not immediately place Burton under arrest and waited to seize the phones until after investigating the victim's allegations and providing Burton with an opportunity to give his version of events." *Id*.

16

Likewise, here: HCSO had probable cause to seize the red iPhone, HCSO reasonably believed Bradshaw would destroy the evidence as he was aware he was under investigation and even asked to delete photos, and they properly balanced their efforts needs with Bradshaw's Fourth Amendment rights by investigating the sexually explicit emails and giving Bradshaw an opportunity to explain them.

      *b.*    *The affidavit establishes sufficient probable cause to search the entire red iPhone, but not to seize its entire contents.*

The Fourth Amendment of the United States Constitution affords the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST., amend. IV. The Supreme Court has "expressed a strong preference for warrants," which "is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 913-14 (1984) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

The task of a judicial officer evaluating an application for a search warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and

basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotations omitted). In *Gates*, the U.S. Supreme Court reaffirmed the validity of the "totality-of-the-circumstances analysis that traditionally has informed probable cause determinations." *Id.* Here, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238-39 (internal quotations and punctuation omitted).

When reviewing the probable cause supporting a warrant, "a reviewing court must consider only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996) (citing *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990)). Probable cause exists where, given the totality of the circumstances, "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the place to be searched. *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *see Gates*, 462 U.S. at 238.

In applying the probable cause standard, the Supreme Court has explained:

> Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp

18

for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*United States v. Ventresca*, 380 U.S. 102, 109 (1965); *see also Gates*, 462 U.S. at 236 ("[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'") (quoting *Spinelli*, 393 U.S. at 419)). Finally, the Supreme Court has "recognized that affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Ventresca,* 380 U.S. at 108.

The state warrant at issue in this case established probable cause to search the defendant's red iPhone and was not overbroad in its search. The government does concede that the state warrant was overbroad in the *seizure* of evidence allowed. However, Bradshaw is not entitled to the suppression of evidence obtained from the red iPhone, under the good faith exception.

Case 1:22-cr-00356-CCE   Document 29   Filed 06/05/23   Page 19 of 30

The state warrant provided ample probable cause that evidence of a juvenile sexual assault and indecent liberties and that evidence of the crimes would be found in the search of Bradshaw's red iPhone. The search warrant indicates that Townsend found recent emails discussing the sexual assault of Minor-1 and that when Townsend tried to discuss this with Bradshaw, Bradshaw came out of a locked bathroom naked and indicated Minor-1 was in the shower. ████████████████████████████████████████ ████████████████████████████████████ Further, it states that when detectives went to the residence and spoke with Bradshaw, he showed them sexually explicit emails, but indicated he did not know where they came from. The affidavit also includes information that since the seizure of the cellphone, Bradshaw was "looking for ways to have his cellphone erased, so that law enforcement would not be able to find anything on his cellphone" and that Bradshaw was "trying to hire a hacker to delete everything," suggesting both the presence of contraband on the phone and Bradshaw's guilty mind about it.

The warrant was not overbroad in what was to be searched. Detective Blakley sought to search "a red in color iPhone 11 having telephone number 910-818-2728 and (PRODUCT) RED printed on the back, housed in a dark blue in color Otterbox cellphone case." Bradshaw argues that the search of his cell

phone that was "beyond his emails led to the discovery of child pornography."
Dkt. 21 at 14.

Generally, the scope of the *search* of a cellular phone where probable cause exists, is the entire cell phone. *United States v. Almonte*, 2022 WL 662318, *10 (W.D. Va. Mar. 4, 2022) (finding the search of a cell phone analogous to the search of a computer and the search of an entire computer is analogous to the search of a large filing cabinet) (citing *United States v. Cobb*, 970 F.3d 319, 336 (4th Cir. 2020); *United States v. Williams*, 592 F.3d 511, 520, 523 (4th Cir. 2010); *Riley v. California*, 573 U.S. 373, 392 (2014); *United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018)). "Insisting that warrants carve out portions of computers and cell phones to be searched (thereby making other portions of the devices completely off-limits to law enforcement) has surface appeal but is neither constitutionally required, nor practical in most circumstances." *Almonte*, 2022 WL 662318 at *11 (citing *Cobb* 970 F.3d at 329).

Here given the circumstances—that someone using Bradshaw's email was talking in detail about the sexual assault ████████████ to an unknown person, ███████████████████████████ ████████████████████ the information provided by Bradshaw at the residence, the reported attempts of Bradshaw to delete "everything" so law enforcement

would not see certain information, and the ability to conceal evidence in electronically stored data and the "highly technical process requiring expert skills and properly controlled environment" needed to search cell phones for criminal evidence—access to the entire phone was reasonably necessary for HCSO to move forward in the investigation.

The government concedes that the warrant is overbroad as to the items to be seized. While the search warrant does not explicitly seek to seize "the entire contents of the cell phones" as the defendant points out, the list of things to be seized in the warrant is the functional equivalent. However, as set forth in further detail below, the officers executed the state search warrant in good faith.

     *c.*    *The officers executed the warrant in good faith.*

Although the seizure of items in the state search warrant is overbroad, Bradshaw is not entitled to suppression of the evidence seized. "Generally, evidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule," the overarching purpose of which is to "deter future unlawful police conduct." *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009) (quoting *Calandra*, 414 U.S. at 347-48)). In *Leon*, the Supreme Court established a "good faith" exception to the exclusionary rule, finding that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which the

22

exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918.

The exclusionary rule applies only to deter "deliberate, reckless, or grossly negligent conduct." *Herring v. United States*, 555 U.S. 135, 144 (2009). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*. The purpose of the exclusionary rule is *not* to afford "a personal right or exclusion to redress a Fourth Amendment injury." *United States v. Almonte*, 2022WL 662318 at *15 (citing *Davis v. United States*, 564 U.S. 229, 236 (2011). Nor is it to deter magistrates. *Davis*, 564 U.S. at 239.

"When an officer genuinely believes that he has obtained a valid warrant ... and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, 'and thus nothing to deter.'" *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015) (quoting *Leon*, 468 U.S. at 920–21). "In an ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 920-21. Thus, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *United States v. Hodge*, 246 F.3d 301, 307-08 (3rd Cir. 2001).

The Court in *Leon*, having "concluded that the marginal or nonexistent

23

benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the costs of exclusion." *Leon*, 468 U.S. at 922-23 However, the Court also held that an officer's reliance must be "objectively reasonable," a standard the affiant met in this case.   Suppression remains appropriate in the following four circumstances: (1) where the judicial officer issuing a warrant was misled by information in an affidavit which the affiant knew was false or would have known was false were it not for his reckless disregard for the truth (*see Franks*, 438 U.S. at 171); (2) where the issuing judicial officer wholly abandoned his judicial role (*see Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)); (3) where the warrant was so lacking in probable cause that the officer's belief in its existence would be entirely unreasonable (*see Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)); and (4) a warrant may be so facially deficient in failing to describe the place to be searched or the items to be seized that an executing officer could not reasonably assume it to be valid (*see Matthew v. Sheppard*, 468 U.S. 981, 988-91 (1975)).  *See Leon*, 468 U.S. at 914-15; *see also United States v. Williams*, 548 F.3d 311, 317-18 (4th Cir. 2008).

Here, the first two circumstances are not at issue.  Moreover, the third circumstance is not at issue as the warrant was not lacking in probable cause, but lacking in probable cause to seize the *entire* contents of the phone. *See*

24

*Almonte*, 2022 WL 662318 at *15.[5]

While the search warrant was overbroad in its authorization of the seizure of the contents, Detective Blakely's reliance on it "was not entirely unreasonable." *See id.* at *16 ("All the government must show is that the officer's reliance on it was not entirely unreasonable.").

First, Detective Blakely relied on a warrant reviewed by two lawyers—first, an Assistant District Attorney who reviewed the document and second, Judge Stone, a North Carolina Superior Court Judge, who ultimately signed the warrant. Where an officer has sought review of a search warrant by an attorney, courts have found reliance on the search warrant's validity objectively reasonable. *See United States v. Cotto*, 995 F.3d 786, 796 (10th Cir. 2021) ("[A]n officer's efforts to obtain approval of a warrant application from a superior and an attorney also indicate the officer was acting in good faith.") (citations omitted); *United States v. Mendonsa*, 989 F.2d 366, 369-70 (9th Cir. 1993) (where search warrant was not supported by sufficient probable cause and officer that "sought advice from county attorneys concerning the substantive completeness of the affidavit before submitting it to the

---

[5] "Although the breadth of the seizure may have rendered the warrant facially *suspect* to the objectively reasonable officer, without reference to the extent of the probable cause present, the breadth of the seizure would not render the warrant facially deficient or, as pertinent here, 'so facially deficient that the executing officers could not have reasonably assumed that it was valid.'" *Id.* (citing *United States v. Qazah*, 810 F.3d 879, 886 (4th Cir. 2015)).

25

magistrate," the court found reliance on the search warrant was objectively reasonable); *United States v. Miller*, 2012 WL 4061771, *8 (M.D.N.C. Sept. 14, 2012) (search warrant application that was later sent to a Superior Court Judge that contained Assistant District Attorney's signature with "OK," "further support[ed] the conclusion that [the officer's] belief in the warrant's validity was objectively reasonable"); *see also United States v. Clutchette*, 24 F.3d 577, 581-82 (4th Cir. 1994) (where officers sought search warrant orally over phone without authority under state law, the Fourth Circuit found they acted in good faith reliance of the warrants in part because of their consultation with a state's attorney's office, who advised them it was lawful) (citing *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir. 1991) (officer's consultation with a government attorney is of significant importance to a finding of good faith).

Further, given the search of an electronic device, "the difference between what is to be searched and what is to be seized is less obvious with digital data than with physical objects." *Almonte*, 2022 WL 662318 at *16. As the district court in *Almonte* explained, had the search warrant been for the residence and authorized Detective Blakely to seize every object inside of it, "the unreasonableness of the seizure would have been more apparent." *Id.* As explained in the foregoing, law enforcement had probable cause to *search* the entire contents of the cell phone. Given that and the technical skill required to search for the evidence, it is not unreasonable that Blakely conflated what

Case 1:22-cr-00356-CCE   Document 29   Filed 06/05/23   Page 26 of 30

was allowed to be search with that was allowed to be seized and thought the seizure of the contents of the phone specified in Attachment A was appropriate.

While the warrant's specific description of evidence to be seized functionally authorized the seizure of the entire contents of the cell phone (*see* Dkt. 21-2 at 4), it does list more specified categories of "SMS messages, MMS messages, incoming and outgoing phone calls, photographs, videos, emails, and/or electronic evidence." *Id*. at 9. Objectively, this list could be viewed to limit the types of evidence the warrant seeks to seize. *See Almonte*, 2022 WL 662318 at *17 (comparing and quoting *United States v. Manafort*, 323 F. Supp. 3d 795, 802 (E.D. Va. July 10, 2018)).

Additionally, the search warrant included information that after the initial seizure of the phone, Bradshaw was "looking for ways to have his cellphone erased, so that law enforcement would not be able to find anything on his cellphone" and was "trying to hire a hacker to delete everything." Dkt. 21-2 at 8. Given Bradshaw was trying to have all of the data deleted and the foregoing regarding the search of electronic devices, that could have reasonably led Detective Blakely to believe that the scope of the seizure was adequate.

Finally, after the search warrant was issued and executed, FBI Special Agent Dye sought applied for and received a federal search warrant that was neither overbroad in its search nor its seizure. *See* Dkt. 21-3. The seizure pursuant to that search warrant should not be suppressed.

27

*d. The Federal search warrant has an independent basis of probable cause.*

Even if the Court finds that the good faith exception does not apply as to the state search warrant of the red iPhone, the evidence seized from the phone pursuant to the federal search warrant should not be suppressed. The federal warrant provides an independent basis to search the phone and seize particularized items. The affidavit for the federal search warrant does contain information related child pornography located during the search of the red iPhone pursuant to the state search warrant. *See* Dkt. 21-3 at 22, 23, 30-32. However, if those portions are excised, probable cause still exists to search and seize the items in the federal search warrant. The warrant describes Townsend's report that he located emails describing the sexual abuse of Minor-1 earlier that day and that Bradshaw and Minor-1 were naked in the shower together. *Id.* at 24. It also includes the content of a number of email messages between Bradshaw and "Tom W" that Townsend took screen shots of and provided to HCSO. *Id.* at 26-28. These graphically describe the rape and sexual abuse of Minor-1 in the past and proposed acts for the future. *Id.* During the discussion of sexual abuse of the minor included in the warrant, Bradshaw is asked if he can "ever vid[eo] chat." *Id.* at 27. These facts provided probable cause to seize the red iPhone from the outset, and they also supported the subsequent federal search warrant to search the contents of that same phone.

28

## IV. **CONCLUSION**

The seizure of Bradshaw's red iPhone was lawful, as there was probable cause to believe that evidence related to a juvenile sexual assault and indecent liberties was on the phone and exigent circumstances supported the warrantless seizure of the phone. While the state search warrant at issue was overbroad in the seizure of evidence, the officers had a reasonable belief that probable cause existed to search and seize the contents of the red iPhone. Further, the federal search warrant, even without information derived from the state search of the red iPhone, provided probable cause to search its contents. Thus, the government respectfully requests that the Court deny the defendant's motion to suppress.

This the 5th day of June, 2023.

Respectfully submitted,

SANDRA J. HAIRSTON
UNITED STATES ATTORNEY

/s/ K. P. KENNEDY GATES
Assistant United States Attorney
North Carolina State Bar No. 41259
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street, 4th Floor
Greensboro, North Carolina 27401
Phone: (336) 333-5351

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Renorda E. Pryor, III.

Respectfully submitted,
/s/ K. P. KENNEDY GATES
Assistant United States Attorney
North Carolina State Bar No. 41259
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street, 4th Floor
Greensboro, North Carolina 27401
Phone: (336) 333-5351